**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **JENNIFER DEMSHUR**<br>**PO Box 523323**<br>**Springfield, VA 22152**<br><br>　　　**Plaintiff,**<br><br>**v.**<br><br>**DISTRICT OF COLUMBIA**<br>**Mayor Muriel Bowser**<br>**John A. Wilson Building**<br>**1350 Pennsylvania Avenue NW**<br>**Washington, DC 20004**<br><br>**Serve: Office of the Attorney General**<br>　　　**Claims Unit, 6th Floor**<br>　　　**441 4th Street NW**<br>　　　**Washington, DC 20001**<br><br>**&**<br><br>**RALPH WAX**<br>**9034 Allington Manor Cir W**<br>**Frederick, MD 21703-2843**<br><br>　　　**Defendants.** | **Civil Action No.**<br><br><br><br>**Jury Demanded** |

## **COMPLAINT**

### **Nature of the Action**

　　　1.　　　Plaintiff Jennifer Demshur brings this civil action pursuant to Title VII of the

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as amended; the District of

Columbia Human Rights Act of 1977 ("DCHRA"), D.C. Code § 2-1401 *et seq.*, as amended; the

District of Columbia Whistleblower Protection Act of 2006 ("DCWPA"), D.C. Code § 1-615.51

*et seq.*; and the torts of Intentional Infliction of Emotional Distress and Invasion of Privacy, for

relief from discrimination on the basis of her sex (female) and for retaliation suffered after she reported her supervisor for sexual harassment.  Immediately after Plaintiff reported her supervisor (Defendant Ralph Wax), he repeatedly sought to dissuade her from pursuing her complaint.  Defendant District of Columbia failed to protect Plaintiff from this retaliation by allowing Defendant Wax to remain in her chain of command for nearly three weeks after she complained.  In addition, Defendant District of Columbia, in contravention of its own policies, publicized Plaintiff's sexual harassment complaint on an internal site accessible to all supervisory personnel, ignored Plaintiff's safety concerns by reassigning her to patrol duty following the publication of her complaint, denied her the opportunity for professional training relevant to her job, sought to dissuade her from pursuing her complaint, lowered her performance evaluation score, and interfered with her use of family and sick leave.

## Jurisdiction and Venue

2.      This Court has original subject matter jurisdiction over Plaintiff's Title VII claims pursuant to 42 U.S.C. § 2000e-5(f)(3).

3.      This Court has jurisdiction over Plaintiff's DCHRA, DCWPA, and tort claims through the exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

4.      This Court has personal jurisdiction over Defendant District of Columbia because, at all times relevant to this Complaint, Plaintiff worked for Defendant at the Metropolitan Police Department of the District of Columbia, First District located at 101 M Street, SW, Washington, DC 20024.

5.      This Court has personal jurisdiction over Defendant Ralph Wax under the District of Columbia's long-arm statute. D.C. Code § 13–423(a)(3).

6.      Venue lies in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)(2) because, at all times relevant to this Complaint, Plaintiff was employed by Defendant in the District of Columbia, all of the discriminatory actions and decisions took place in the District of Columbia, and the records concerning Plaintiff's employment are maintained in the District of Columbia.

7.      Venue lies in this Court for the tort claims because Defendant Wax and Plaintiff worked in the District of Columbia and all the incidents giving rise to the tort claims occurred in the District of Columbia.

## The Parties

8.      Plaintiff Jennifer Demshur is a resident of the state of Virginia.  At all times relevant to this Complaint she has been employed by the Metropolitan Police Department of the District of Columbia ("MPD").

9.      The MPD is a constituent agency of the Government of the District of Columbia. At all times relevant to this Complaint, Defendant operated a facility in the District of Columbia.  At all times relevant to this Complaint, Defendant employed more than 25 employees and is an employer as defined by 42 U.S.C. §2000e(b).

10.      Defendant Ralph Wax is a resident of the state of Maryland.  At all times relevant to this Complaint, he was employed by the MPD, First District in a supervisory capacity; he was an employer as defined by D.C. Code §2-1401.02(10).  He is being sued in his individual capacity.

## Statement of Facts

### A. Demshur's Professional Background

11.     Jennifer Demshur has been employed as a police officer with MPD since June 2012.

12.     Since July 2016, Ofc. Demshur has worked in the Administrative Office of MPD's First District.

### B. Wax Sexually Harassed Demshur

13.     On or about January 26, 2018, Sgt. Wax became Ofc. Demshur's immediate supervisor.

14.     Shortly thereafter, Sgt. Wax began making inappropriate and unwelcome sexual comments to Ofc. Demshur.

15.     On one occasion, while sitting at her desk, Sgt. Wax asked Ofc. Demshur how she was feeling.  When Ofc. Demshur responded that she was feeling nauseous, Sgt. Wax told her that she should "rub one out."  Sgt. Wax then commented that it would be funny if someone were to come upstairs and see the entire Administrative Office masturbating.  Wax's conduct was unwelcome to Ofc. Demshur.

16.     On separate occasions, Sgt. Wax made unwanted comments to Ofc. Demshur about his vasectomy, his wife's breast implants, his erectile dysfunction medication, masturbation, and sex toys.

17.     Sgt. Wax also disclosed to Ofc. Demshur, in great detail, the circumstances that led to his recent arrest for prostitution in Maryland.  Wax's conduct was unwelcome to Ofc. Demshur.

18.     On another occasion, Sgt. Wax called Ofc. Demshur into his office and told her that her pants were too big.  He said, "you know how you can fix that, don't you? You can wear something underneath."  Sgt. Wax then suggested that Ofc. Demshur should wear a "strap-on" under her uniform trousers, and he showed her an image on his work computer of a man dressed in female lingerie wearing a large strap-on dildo. Wax's conduct was unwelcome to Ofc. Demshur.

19.     Ofc. Demshur was humiliated, disgusted, and extremely uncomfortable.

### C. Demshur Reports the Sexual Harassment

20.     On or about February 16, 2018, despite her fear of retaliation, Ofc. Demshur verbally reported Sgt. Wax's sexual harassment to another supervisor within MPD, Capt. Jonathan Dorrough.

21.      On or about February 21, 2018, Capt. Dorrough reported Ofc. Demshur's sexual harassment complaint to the MPD's Equal Employment Opportunity ("EEO") Investigations Division, which opened an internal investigation.

22.     That same day, another sergeant told Ofc. Demshur that her entire EEO complaint (including her name and the details of the offensive incidents) was visible on MPD's Personnel Performance Management System ("PPMS") to employees who should not have had the ability to view the complaint.  He also informed Ofc. Demshur that he overheard two other sergeants discussing her complaint.

23.     PPMS is accessible to all employees holding supervisory positions throughout MPD.

24.     When Ofc. Demshur's complaint was uploaded into PPMS, MPD failed to limit its availability to only employees with a need to know, as required by MPD policy.

25.     Mayor's Order 2017-313 on Sexual Harassment Policy, Guidance, and Procedures provides that constituent agencies of the Government of the District of Columbia, such as MPD, shall take all reasonable steps to ensure that no information contained in the complaint file is disseminated and "take all reasonable efforts during the conduct of an investigation to protect the identities of the alleged harasser and the alleged victim."

26.     Ofc. Demshur immediately contacted her union representative regarding the publication of her complaint.  In turn, the union representative notified First District Commander Morgan Kane.

27.     Because Cmdr. Kane did not take remedial action, the union representative reported the disclosure to Capt. Pulliam.  Capt. Pulliam took actions to restrict access to the complaint in PPMS to only employees with a need to know.

28.     Ofc. Demshur's complaint was not removed from PPMS until almost 24 hours after she first learned of its publication.  By this point, several of her colleagues had already viewed the complaint or heard about it from someone who had.

29.     Over the coming days, colleagues mocked Ofc. Demshur for the incidents she described in her EEO complaint.

### D.  Wax Retaliates Against Demshur

30.     On or about March 1, 2018, Sgt. Wax confronted Ofc. Demshur on the street outside of the First District Station and informed her that he was aware of the EEO investigation.  Sgt. Wax also tried to convince Ofc. Demshur not to follow through with her complaint.  Ofc. Demshur was extremely upset by this hostile encounter.

31.     On or about March 2, 2018, Sgt. Wax again confronted Ofc. Demshur about her complaint.  He followed her to the printer, gathered her EEO investigation documents, and told her she did not need to cooperate with the investigation.

32.     On or about March 5, 2018, Sgt. Wax followed Ofc. Demshur around the office, closely monitoring her work, hovering over her desk, and watching her computer screen.

33.     Sgt. Wax's actions and his continued supervision of Ofc. Demshur – even after she complained of sexual harassment and he tried to dissuade her from pursuing her complaint – made Ofc. Demshur so uncomfortable that she spoke to a counselor with the Metropolitan Police Employee Assistance Program.  Ofc. Demshur detailed the sexual harassment and retaliation to the counselor, who, in turn, contacted Cmdr. Kane and told her it was imperative that she remove Sgt. Wax from Ofc. Demshur's chain of command.

34.     After the counselor's call to Cmdr. Kane, on or about March 5, 2018, Ofc. Demshur provided a full account of the harassment, retaliation, and complaint publication to Cmdr. Kane.

35.     Instead of investigating the misuse and unauthorized access of Ofc. Demshur's EEO complaint by her coworkers, Cmdr. Kane demanded that Ofc. Demshur identify the sergeant who informed her about the publication of her complaint.

36.     MPD never conducted an investigation into the mishandling of Ofc. Demshur's EEO complaint.

37.     Finally, on or about March 6, 2018, Sgt. Wax was removed from Ofc. Demshur's chain of command and detailed to another division in MPD.

### E. *Despite Objections, Kane Attempted to Place Demshur on Patrol*

38.     Prior to being subjected to sexual harassment, in or around February 2017 and in or around early-January 2018, Ofc. Demshur had asked to return to patrol duty.

39.     On or about March 21, 2018, Capt. Dorrough asked Ofc. Demshur if she wanted to go back on patrol or stay in the Administrative Office.  Because of how she was treated after her complaint was publicized, Ofc. Demshur confirmed in writing with Capt. Dorrough that she now wished to remain in her position in the Administrative Office.

40.     Despite this, on or about April 20, 2018, Capt. Dorrough informed Ofc. Demshur that Cmdr. Kane had directed him to remove Ofc. Demshur from her Administrative Office position and assign her to patrol.  At this time, Ofc. Demshur reiterated her desire to stay in her administrative role and her opposition to returning to patrol duty in the First District, as she feared for her safety and well-being now that her sexual harassment complaint was common knowledge among First District employees.

41.     Yet, on or about May 12, 2018, MPD posted a duty schedule with Ofc. Demshur assigned to patrol duty effective May 27, 2018.

42.     On May 24 and 29, 2018, MPD's EEO Investigations Division sustained Ofc. Demshur's allegations of sexual harassment and retaliation against Sergeant Wax.  MPD suspended Sgt. Wax for three days for his sexual harassment and retaliation of Ofc. Demshur; however, in contravention of the suspension, MPD allowed Wax to use leave rather than serve the suspension.  Sgt. Wax subsequently was allowed to retire from MPD.

43.     From May 27 through May 31, 2018, Ofc. Demshur was on limited duty.

44.     On or about May 31, 2018, Ofc. Demshur met with Cmdr. Kane to again express her safety concerns with returning to patrol.  Only after she informed Cmdr. Kane that the EEO

Investigations Division had sustained her sexual harassment allegations did Cmdr. Kane approve Ofc. Demshur's request to remain in her administrative position.

### F. Kane Denied Demshur Training

45.     On or about August 1, 2018, Cmdr. Kane denied Ofc. Demshur's request to register for the Intoximeter EC IR II Breath Alcohol Test Operator training course.

46.     This training was necessary because police officers working regular non-patrol assignments, like Ofc. Demshur, are detailed to patrol assignments for one week every six weeks and on certain holidays to support patrol functions in the field.

### G. Demshur Requested Reassignment

47.     After Sgt. Wax was reassigned from the First District in March 2018, Lt. Bredet Williams, Ofc. Demshur's new supervisor, began using Sgt. Wax's old office.

48.     From Sgt. Wax's reassignment until early August, Ofc. Demshur did not have occasion to enter Sgt. Wax's former office.  On or about August 3, 2018, Ofc. Demshur entered Sgt. Wax's former office for the first time since he had been reassigned.

49.     Shortly thereafter, Ofc. Demshur suffered an anxiety-induced panic attack, which was triggered by having to enter Sgt. Wax's former office where much of the sexual harassment had occurred.  Through the Police and Fire Clinic ("PFC"), Ofc. Demshur requested that MPD reassign her out of the First District so that she would not suffer further emotional harm by working in the location where she was sexually harassed.

50.     Ofc. Demshur remains in treatment as a result of the sexual harassment, retaliation, and continuing hostility from MPD (including Cmdr. Kane) following Ofc. Demshur's complaint.

51.     MPD's Medical Services Division determined that Ofc. Demshur's behavioral health illness arose out of and in the course of her employment with MPD after she was sexually harassed by Sgt. Wax.

52.     On August 14, 2018, while Ofc. Demshur was on sick leave for her mental health illness which arose out of the sexual harassment (classified by MPD as an on-duty injury), Cmdr. Kane told Ofc. Demshur that the PFC's Director of Medical Services had spoken with her about Ofc. Demshur's request to leave the First District.  Ofc. Demshur expressed to Cmdr. Kane that she did not want to work in the environment that continually triggers her anxiety. Cmdr. Kane flippantly suggested that Ofc. Demshur move her desk to another place in the building.

53.     Since then, Ofc. Demshur has repeatedly requested through the PFC to be reassigned out of the First District.

54.     To date, MPD has not reassigned Ofc. Demshur out of the First District.

### H.  MPD Interferes with Demshur's Use of Family and Medical Leave

55.     On or about September 26, 2018, Ofc. Demshur sought leave under the federal and District of Columbia Family and Medical Leave Acts ("FMLA") to care for her mother, who had contracted a severe infection.  Ofc. Demshur applied for 248 hours of continuous FMLA leave through November 10, 2018, to provide critical home care for the duration of her mother's intravenous antibiotic treatment.  Ofc. Demshur provided medical documentation supporting her request, which further explained that after the antibiotic treatment was complete, Ofc. Demshur would need an additional 72 hours of intermittent leave for her mother's follow-up medical appointments and continuing care.

56.     On or about September 28, 2018, Ofc. Demshur received a phone call from an unidentified female, who told Ofc. Demshur she would need to provide more proof of her mother's condition, even though Ofc. Demshur had already provided a doctor's certification of her mother's condition.

57.     Ofc. Demshur immediately called the Human Resources Management Division Program Coordinator for clarification.  The Program Coordinator informed Ofc. Demshur that she would have to provide additional information, or her application would be denied.

58.     MPD did not identify in writing the deficiencies with Ofc. Demshur's family leave application.

59.     Ofc. Demshur provided the Program Coordinator with a second medical certification from her mother's physician.

60.     Later that day, Ofc. Demshur received an approval letter signed by the Program Coordinator.  However, it was for only 104 hours of intermittent paid family leave, significantly less than the 248 hours of continuous hours she originally requested, which was substantiated by the medical documentation she provided.

61.     Ofc. Demshur contacted Angela Simpson, Director of the Human Resources Management Division, to appeal the partial denial.  Ms. Simpson upheld the partial denial, concluding that Ofc. Demshur only needed 104 hours to care for her mother.  This was directly contrary to the recommendations of Ofc. Demshur's mother's treating physician.

62.     Only after Ofc. Demshur again questioned Ms. Simpson about the basis for the partial denial, did Ms. Simpson approve Ofc. Demshur's original FMLA request.

### I.  *Another Supervisor Attempted to Dissuade Demshur from EEO Participation*

63.     On or about October 4, 2018, Ofc. Demshur filed a new complaint with the EEO Investigations Division asserting retaliation by Cmdr. Kane.

64.     On or about November 2, 2018, Ofc. Demshur received an Exit Letter from the EEO Investigations Division regarding her retaliation complaint. The EEO Investigations Division did not complete an investigation into Ofc. Demshur's complaint because she was on family leave in October.

65.     On November 13, 2018, Ofc. Demshur filed a charge with the Equal Employment Opportunity Commission ("EEOC") based on the sexual harassment and retaliation she had experienced since January.

66.     Sometime during the week of November 25, 2018, MPD's Office of the General Counsel sent a litigation hold to the First District Administrative Office email account.

67.     Because of this e-mail, all employees in the Administrative Office became aware of Ofc. Demshur's complaint against Cmdr. Kane, including the Commander herself.

68.     Also following this litigation hold, Lt. Williams informed Ofc. Demshur that electronic evidence related to her complaint was likely destroyed due to an MPD server crash three weeks prior and that nothing would happen to Cmdr. Kane.  Lt. Williams told Ofc. Demshur that she was not the first person that has "tried to go after her [Kane]," and that Ofc. Demshur would be removed from her position before the Commander would.

69.     After Cmdr. Kane learned about Ofc. Demshur's retaliation complaint, Cmdr. Kane refused to speak to Ofc. Demshur and indirectly assigned her work through her colleagues.

70.     Before Ofc. Demshur filed her complaints, Cmdr. Kane spoke and directly assigned work to Ofc. Demshur.

### J.  Supervisor Downgraded Demshur's Performance Ratings

71.     On or around November 13, 2018, Ofc. Demshur received her 2018 Performance Rating from Sgt. Timothy Holmes.  Sgt. Holmes rated her a 3 out of 5[1] on the Performance Dimensions of Professionalism and Interpersonal Relations.  Prior to this, Ofc. Demshur had never received less than a 4 on any Dimension and had twice been awarded a 5 in Professionalism.

### K.  Supervisor Interferes with Demshur's Use of Sick Leave

72.     MPD's Optional Sick Leave policy allows employees, like Ofc. Demshur, to use up to three days of accrued sick leave, in bona fide cases, without being required to appear at the PFC for an examination.  A bona fide case is defined under this policy as an instance when an employee is incapacitated to perform duty due to illness or treatment.

73.     On or about March 28, 2019, Ofc. Demshur became ill with an acute medical condition and needed immediate treatment.  Her illness was not incurred in the performance of her duty.

74.     She called Lt. Williams to request leave under the Optional Sick Leave policy.  Lt. Williams initially approved Ofc. Demshur's request; however, within minutes, she called Ofc. Demshur back and ordered her to go to the PFC for examination.

75.     Ofc. Demshur questioned the basis for this denial and explained that she had sufficient accrued sick leave, had provided Lt. Williams with the information required under the Optional Sick Leave policy, and was otherwise eligible for leave under the policy.  Lt. Williams

_____

[1] A rating of 5 means the employee "Significantly Exceeds Expectations"; a rating of 1 means the employee "Does Not Meet Expectations."

responded that Cmdr. Kane demanded an explanation for why Ofc. Demshur was taking sick leave and ordered that she report to the PFC.

76.     Ofc. Demshur contacted her union representative, who called Capt. Pulliam, Lt. Williams's superior.  Capt. Pulliam called Ofc. Demshur and verbally approved her leave.

77.     In early July 2019, Ofc. Demshur exhausted her accrued sick leave while out of work with an illness.  On or about July 8, 2019, she applied for advanced sick leave in lieu of taking Leave Without Pay.  Cmdr. Kane did not approve Ofc. Demshur's application until July 17, 2019, which caused her to lose pay for several weeks.

### L. Exhaustion of Administrative Remedies

78.     On November 13, 2018, Ofc. Demshur filed a charge with the Equal Employment Opportunity Commission based on the sexual harassment and retaliation she had experienced since January 2018.

79.     On Ofc. Demshur's EEOC Charge of Discrimination, she noted that she cross-filed with the DC Office of Human Rights.

80.     On June 24, 2019, Ofc. Demshur received the Dismissal and Notice of Rights, which had been mailed by the EEOC on June 20, 2019.

### Statement of Claims

### COUNT I
### SEXUAL HARASSMENT
### IN VIOLATION OF TITLE VII
### (Defendant District of Columbia)

81.     Plaintiff realleges and reincorporates the preceding paragraphs of this Complaint.

82.     Because of Plaintiff's sex, she was subjected to inappropriate and unwelcome sexual harassment from her immediate supervisor, Defendant Wax.

83.     Defendant Wax repeatedly subjected Plaintiff to unwelcome comments of a sexual nature.

84.     Defendant Wax's actions directed to Plaintiff were sufficiently severe or pervasive to alter the terms, conditions and privileges of her employment and to create an abusive, intimidating, hostile and offensive working environment.

85.     MPD was on notice of Defendant Wax's sexual harassment when Plaintiff reported the sexual harassment to another supervisor and failed to take effective remedial action to prevent Defendant Wax from continuing to harass and retaliate against her.

86.     Eventually, MPD's EEO Investigations Division concluded that Defendant Wax had sexually harassed Ofc. Demshur.

87.     As a result of Defendant Wax's conduct, Plaintiff suffered damages, including, but not limited to, pain and suffering, emotional distress, humiliation, and loss of professional reputation.

## COUNT II
## SEXUAL HARASSMENT
## IN VIOLATION OF DCHRA
### (All Defendants)

88.     Plaintiff realleges and reincorporates the preceding paragraphs of this Complaint.

89.     Because of Plaintiff's sex, she was subjected to inappropriate and unwelcome sexual harassment from her immediate supervisor, Defendant Wax.

90.     Defendant Wax repeatedly subjected Plaintiff to unwelcome comments of a sexual nature.  This conduct occurred in the District of Columbia.

91.     Defendant Wax's actions directed to Plaintiff were sufficiently severe or pervasive to alter the terms, conditions and privileges of her employment and to create an abusive, intimidating, hostile and offensive working environment.

15

92.    MPD was on notice of Defendant Wax's sexual harassment when Plaintiff reported the sexual harassment to another supervisor and failed to take effective remedial action to prevent Defendant Wax from continuing to harass and retaliate against her.

93.    Eventually, MPD's EEO Investigations Division concluded that Defendant Wax had sexually harassed Ofc. Demshur.

94.    As a result of Defendant Wax's conduct, Plaintiff suffered damages, including, but not limited to, pain and suffering, emotional distress, humiliation, and loss of professional reputation.

**COUNT III**
**RETALIATION**
**IN VIOLATION OF TITLE VII**
**(Defendant District of Columbia)**

95.    Plaintiff realleges and reincorporates the preceding paragraphs of this Complaint.

96.    Plaintiff engaged in conduct protected by Title VII when she complained to Defendant about sexual harassment, when she participated in the investigation of her claims of sexual harassment and retaliation, when she reported the publication of her sexual harassment complaint, and when she filed a charge with the EEOC.

97.    After she engaged in protected activities, Defendant retaliated against Plaintiff through a series of materially adverse actions that would dissuade a reasonable employee from making or supporting a charge of discrimination, including, but not limited to, failing to maintain the confidentiality of her sexual harassment complaint; reassigning her to patrol duty; denying her training; decreasing her performance evaluation; refusing to reassign her to another District; attempting to dissuade her from pursuing her complaints; ignoring her; refusing to give her tasks to complete; interfering with her use of family and sick leave; and failing to timely approve her advanced sick leave request.

16

98.     Defendant's materially adverse actions were sufficient to deter a reasonable person from engaging in protected activity.

99.     As a result of Defendant's retaliation, Plaintiff suffered damages including, but not limited to, pain and suffering, emotional distress, humiliation, and loss of professional reputation.

**COUNT IV**
**RETALIATION**
**IN VIOLATION OF DCHRA**
**(All Defendants)**

100.    Plaintiff realleges and reincorporates the preceding paragraphs of this Complaint.

101.    Plaintiff engaged in conduct protected by the DCHRA when she complained to Defendant District of Columbia about sexual harassment, when she participated in the investigation of her claims of sexual harassment and retaliation, when she reported the publication of her sexual harassment complaint, and when she filed a charge with the EEOC.

102.    After she engaged in protected activities, Defendants retaliated against Plaintiff through a series of materially adverse actions that would dissuade a reasonable employee from making or supporting a charge of discrimination.

103.    Defendants' conduct included, but was not limited to, attempting to dissuade her from pursuing her complaints. This conduct occurred in the District of Columbia.

104.    Defendant District of Columbia's conduct included, but was not limited to, failing to maintain the confidentiality of her sexual harassment complaint; reassigning her to patrol duty; denying her training; decreasing her performance evaluation; refusing to reassign her to another District; ignoring her; refusing to give her tasks to complete; interfering with her use of family and sick leave; and failing to timely approve her advanced sick leave request.

105.    Defendants' materially adverse actions were sufficient to deter a reasonable person from engaging in protected activity.

106.    As a result of Defendants' retaliation, Plaintiff suffered damages including, but not limited to, pain and suffering, emotional distress, humiliation, and loss of professional reputation.

**COUNT V**
**RETALIATION**
**IN VIOLATION OF DCWPA**
**(Defendant District of Columbia)**

107.    Plaintiff realleges and reincorporates the preceding paragraphs of this Complaint.

108.    Plaintiff made a protected disclosure governed by the DCWPA when she complained to Defendant about sexual harassment and retaliation by Defendant Wax, and when she reported the disclosure of her sexual harassment complaint.

109.    After she engaged in protected activities, Defendant retaliated against Plaintiff through a series of materially adverse actions that would dissuade a reasonable employee from making or supporting a charge of discrimination, including, but not limited to failing to maintain the confidentiality of her sexual harassment complaint; reassigning her to patrol duty; denying her training; decreasing her performance evaluation; refusing to reassign her to another District; attempting to dissuade her from pursuing her complaints; ignoring her; refusing to give her tasks to complete; interfering with her use of family and sick leave; and failing to timely approve her advanced sick leave requests.

110.    Defendant's materially adverse actions were sufficient to deter a reasonable person from engaging in protected activity.

111.    Plaintiff's protected disclosures were a contributing factor to Defendant's adverse actions taken against her.

112.   As a result of Defendant's conduct, Plaintiff suffered damages including, but not limited to, pain and suffering, emotional distress, humiliation, and loss of professional reputation.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

113.   Plaintiff realleges and reincorporates the preceding paragraphs of this Complaint.

114.   Defendants' conduct toward Plaintiff was outrageous, extreme, and intolerable.

115.   Defendants' conduct was intentional or reckless.

116.   Defendants' conduct included, but was not limited to, unwelcome sexual comments about masturbation, erectile dysfunction, and sex toys.  Defendants also showed Plaintiff pornographic images and attempted to dissuade her from pursuing her complaints of sexual harassment.  This conduct occurred in the District of Columbia.

117.   There is a causal connection between Defendants' conduct and Plaintiff's severe emotional distress.

118.   A reasonable person would not expect or tolerate the abuse of Plaintiff by Defendants.

119.   Defendants abused their positions of authority over Plaintiff when they engaged in extreme, outrageous, and intolerable conduct.

120.   As a result of Defendants' conduct, Plaintiff suffered damages including, but not limited to, pain and suffering, emotional distress, humiliation, and loss of professional reputation.

## COUNT VII
## INVASION OF PRIVACY
### (Defendant District of Columbia)

121.     Plaintiff realleges and reincorporates the preceding paragraphs of this Complaint.

122.     Defendant published Plaintiff's sexual harassment complaint through PPMS in a manner which allowed all employees holding supervisory positions throughout MPD to view her complaint.

123.     Most supervisory employees given access to Plaintiff's sexual harassment complaint had no legitimate reason to have access to the complaint.

124.     The publication of Plaintiff's sexual harassment complaint would cause suffering, shame, or humiliation to a person of ordinary sensibilities.

125.     As a result of Defendant's conduct, Plaintiff suffered damages, including, but not limited to, pain and suffering, emotional distress, humiliation, and loss of professional reputation.

### Jury Demand

126.          Plaintiff demands a trial by jury on all claims so triable.

### Prayer for Relief

Plaintiff Jennifer Demshur seeks the following relief:

a.     Declaratory relief that Defendants' actions, policies, and practices as alleged are unlawful;

b.     Equitable relief to ensure that Defendants' workplaces are free from unlawful discrimination and retaliation by directing Defendants to take such affirmative action as is necessary to ensure that the effects of those unlawful employment

20

practices are eliminated and do not continue to affect Plaintiff's employment and

advancement opportunities;

c.    Preliminary and permanent injunctive relief to restore her as nearly as possible to

the position she would have held had Defendants' unlawful actions not occurred;

d.    Lost wages and all other compensation denied to or lost by Plaintiff by reason of

Defendants' unlawful actions, in an amount to be proven at trial;

e.    Interest on lost wages, compensation, and damages, including pre- and post-

judgment interest and an upward adjustment for inflation;

f.    Compensatory damages for the injuries she has suffered, including emotional and

physical harm and damage to her character and reputation, in an amount to be

proven at trial;

g.    Punitive damages in an amount to be proven at trial;

h.    Costs of this action, including reasonable attorneys' fees;

i.    All other legal and equitable relief to which she may be entitled, and the Court

finds just and proper.

Respectfully submitted,

/s/Sarah Martin
Sarah Martin, DC Bar No. 187514
smartin@kcnlaw.com
Elaine L. Fitch, DC Bar No. 471240
efitch@kcnlaw.com
KALIJARVI, CHUZI, NEWMAN &
    FITCH, P.C.
818 Connecticut Ave. NW; Suite 1000
Washington, DC 20006
Tel.: 202-331-9260
Fax: 866-452-5789

*Attorneys for Plaintiff Jennifer Demshur*

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:   Jennifer Demshur
P.O. Box 523323
Springfield, VA 22152

From:   Washington Field Office
131 M Street, N.E.
Suite 4NW02F
Washington, DC 20507

| | |
|---|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 570-2019-00469 | Yumi Cosbert,<br>Investigator | (202) 419-0792 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

RECEIVED

JUN 24 2019

By The Office Of

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred** <u>more than 2 years (3 years)</u> **before you file suit may not be collectible.**

On behalf of the Commission

JUN 20 2019

Enclosures(s)

Mindy E. Weinstein,
**Acting Director**

*(Date Mailed)*

cc:   **Alphonso Lee**
**Director (EEO)**
**METROPOLITAN POLICE DEPARTMENT**
**6 D.C. Village Lane, S.W., Building 1A**
**Washington, DC 20032**

**Sarah Martin**
**KALIJARVI, CHUZI, NEWMAN & FITCH, P.C.**
**818 Connecticut Avenue, N.W.**
**Suite 1000**
**Washington, DC 20006**